1-11-3-0-4-4 Royal Continental Box v. Christopher Charles Council, you may proceed. Good morning. Karen Beverly, Fireman Critic in Mirabelli, Sward Love, appearing on behalf of Christopher... Could you speak up? Yes. You're like the first person in my life who's asked me to do that. It must be the microphone. There you go. Karen Beverly, appearing on behalf of Christopher Charles. We are the appellant in this matter. There's also a cross-appeal filed. The issues kind of factually and legally tie into each other, so I think that I'll probably end up addressing a lot of those in my opening comments. We are here today to ask this Court to overturn the decision of the Circuit Court Judge Sheldon Gardner because that decision overstepped his authority in that he substituted his own assessment of the facts, his own assessment of credibility for that of the Commission. Before we get to the facts here, I would like to talk a little bit about what it was that Judge Gardner was supposed to do when he reviewed the decision. He only had authority to reverse the decision of the Commission if there was no evidence in the record to support the findings of the Commission. He was very much not supposed to substitute his own opinions of how to weigh the evidence for that of the Commission. He was not to weigh the credibility of the evidence that was presented. That is all the job of the Commission. That being said, let's look at the evidence. And this is uncontested evidence. This is, if you look at the briefs that are before the Court today, this is evidence that both sides agree were submitted to the Commission. Christopher Charles was injured on December 20th of 2003. That is agreed. It is agreed that he was injured when he stepped back into a bucket of chemical cleaning solution and sustained a burn. It's agreed that he sustained a full-thickness alkaline chemical burn to his left foot and that that occurred while he was working and in the course of his employment with Royal Continental Box. It is uncontested that records from at least five different treating physicians were submitted to the Commission for review. And that none, specifically there was a finding by the Commission that none of those treating physicians found or opined that Charles was a malingerer. They all found him to be forthcoming with his complaints of pain and they found him to be credible. And then you have to look at what the treating physicians did over the course of years of treatment. They prescribed EMGs. They prescribed pain medication, including a morphine drip. They prescribed a nerve block. They prescribed work restrictions. These are things that treating physicians would not do if there were not credible complaints of pain. It is also uncontested that on October 5th, 2004, there was an EMG which demonstrated abnormalities consistent with a nerve injury. There was a second EMG which was ordered by and interpreted by Dr. Medina on December 3rd, 2004, again consistent with nerve damage. Dr. Medina, who was a treating physician of Christopher Charles for over a year, believed that nerve damage to be on whether he was entitled to TTD from February 9th, 2005 through November 15th, the date that he stopped work until the arbitration hearing, right? That's the period? That's correct. The original arbitration award awarded TTD through November 15th of 2006. That was upheld by the Commission with one dissent. When Dr. I'm sorry, when Judge Gardner issued his opinion in August, he cut off that in the spring of 2004. It was not more specific than that. So when the case was then remanded back to the Commission, they used I believe it was May of 2004 as the date. So you've got Dr. Medina clearly supporting the claimant. You've got Blansky who I think a fair assessment is he's sort of suggesting that the claimant exaggerated the pain a little bit, right? I believe that that's correct, but we have to take a look at who Dr. Blansky was in this versus who Dr. Medina was in this. First of all, the arbitrator made a specific finding in his opinion that he gave more weight to the evidence testimony which was presented by deposition of Dr. Medina versus Dr. Blansky. Dr. Blansky saw Christopher Charles one time well over a year after the injury occurred. Dr. Blansky was the retained expert on behalf of Royal Box. He was not a treating physician. Dr. Medina, on the other hand, is a board certified neurologist and a clinical physiologist who actually treated Mr. Charles for over a year. So it was absolutely proper for the Commission to give more weight to his testimony when he connected the ongoing complaints of pain to the initial injury. And Medina, again, is clearly supportive of the claimant. He says the claimant continued to suffer pain related to the original accident. But doesn't Medina say something, he has no definitive psychological explanation for the continued pain? And that is something that you see in the records and that's something that I anticipate that counsel is going to raise in response, that there is a thought with Dr. Medina and some other medical records that you see that there isn't a clear organic connection between the pain complaints. Well, that would be true of all the medical records, actually, would it not? Well, I'm not sure that that's 100 percent fair because there are objective evidence of nerve damage. There are two EMGs that demonstrate that there was nerve damage. But there were also some things, such as the nerve blocks, which didn't Nerve damage, which would explain this pain going all the way up to the knee? According to Dr. Medina, yes. According to Dr. Blonsky, no. But again, it's the Commission's job to weigh medical evidence and resolve any conflicts between medical evidence that is offered by the petitioner, and the Commission did that in this instance, and they gave more weight to the treating physician versus to the hired expert who evaluated Mr. Charles once. But just because there is no clear What specifically was Dr. Medina's opinion? He diagnosed him with I'm sorry, the words are not I'm not as well versed in the terminology as some people here. Well, did he ever express an opinion that this unexplained pain was work-related? He did. He did, and that was evidence that was submitted to the Commission by way of Dr. Medina's medical records, as well as his evidence deposition. He was a treating physician for over a year, and he opined that there was nerve damage which was causally related to the work injury, and that that nerve damage was what was causing the pain that Mr. Charles complained of. That was Dr. Medina's testimony that was submitted to the Commission. All right. So your position appears to be, from understanding that you just alluded to, you've got conflicting medical evidence. It's up to the Commission to weigh the evidence to credibility of the witnesses and the weight. And they chose Medina's conclusions over Blansky's. Absolutely. And the Commission, too, just to be clear, you know, that was within the Commission's right, and it was their job to do that. They gave more weight to Dr. Medina's testimony and medical assessment. But there were other findings that support that. The Commission saw Christopher Charles testify. There were specific findings that they found him to be credible. There was no evidence, there's specific findings by the Commission that there's no evidence in the medical records that any of these numerous treaters, and there's at least five that are specifically referred to in the arbitration decision, none of these treaters found him to be anything less than forthcoming with his complaints. Other than Blansky, does anybody else suggest there was some malingering here? No. And there's a specific finding by the Commission of that. And I believe that Dr. Blansky himself, in his evidence deposition, acknowledges that. Dr. Blansky acknowledges that there was no malingering noted in the medical records, and he also acknowledges the abnormal findings in the EMGs. And despite those, he goes on to say that the pain had resolved, or that the injury had resolved itself and that any ongoing complaints of pain were not related. Did they express a rationale as to how they concluded there was no malingering? I don't understand what rationale you mean to do. A specific consideration? I can't point to anything in a medical record or in the record before this Court that shows a specific doctor saying, I have given specific consideration to whether or not Christopher Charles' complaints are forthcoming, whether he's being honest. How does the doctor come to that conclusion? That's what I'm asking. Well, I mean, I think you need to look not just at what the doctors are saying, but what they're doing. We're talking about doctors that over the course of several years were prescribing invasive, you know, debriding the wounds, morphine drips, physical therapy, numerous EMGs, nerve blocks. This is not something that these doctors would be prescribing if they thought that Christopher Charles was, you know, making it up or was, you know, going from the date of the injury all the way through the date of the arbitration consistently. I mean, if you look at the records, there are years of this treatment. And it's not one doctor. It's not just Dr. Medina who's prescribing this ongoing treatment. It's several doctors. Many of them from Loyola, some not. Different specialties. There were pain specialists involved. There were burn specialists involved. There were physical therapists involved. And yes, there was a psychiatrist or a psychologist involved. And these people continued to prescribe ongoing treatment to get to the bottom of it, which I think really demonstrates very clearly that they believed his complaints to be credible and believed that the ongoing tests, the EMGs, the nerve blocks, things like that, would eventually, you know, lead to the cause. Unfortunately, it didn't. But despite that fact, Dr. Medina was confident and comfortable enough, after having treated Mr. Charles for over a year, to opine that the complaints were causally connected to the injury, that they were ongoing, and the commission relied on that. And it was absolutely within their right to rely on that. It was within their right to rely on that to the exclusion of Dr. Blonsky, who saw Mr. Charles once. That in and of itself supports the commission's decision. But then when you couple in the fact that they made specific findings about Mr. Charles Verasti at the arbitration hearing, and their own review of the medical records, which showed that there was no evidence of malingering, it is very clear that the commission's decision was based on credible evidence, and that Judge Gardner's reversal of that decision overstepped his authority. As a matter of fact, there was a dispute between Blonsky and Medina as to whether the man was malingering or exaggerating. Medina, I believe, the record reflects that he said, his impression was that the claimant was never malingering. But Blonsky testified that the claimant was probably exaggerating his pain, most likely for financial reasons. I mean, there was a dispute. That in and of itself is kind of incredible when you look at what this case has done to this man. You're talking about someone who is a self-sufficient, self-supporting individual who has since had to move in with his elderly, either mother or grandmother, because of this. So for Dr. Blonsky to attribute any of this to any kind of attempt at financial gain by Christopher Charles in and of itself is incredible. It just doesn't add up. The other side of that is there's been no financial gain whatsoever, and as a matter of fact, he's lost a lot because of this. But in short, Dr. Medina's testimony in and of itself supports the decision of the commission. When you couple that with the other findings of fact by the commission, it's very clear that Judge Gardner substituted his own opinion, his own assessment for that of the commission, which was improper. So what we're asking this Court to do is to find that the initial arbitration decision was supported by facts to reverse Judge Gardner's decision, and the commission opinion on remand based on Judge Gardner's decision, and to restore the arbitration decision. Counsel, before you step down, in case opposing counsel does bring this up, thereby depriving you of the opportunity to respond to a rebuttal, Royal has requested that we dismiss the appeal because your brief is deficient. I'd like your response to that. My response is as follows. We do not need to go through line by line and recite everything that was presented at arbitration. What we need to do is present this Court with sufficient facts to uphold the commission's decision, and we do that. I think that counsel makes the argument about our factual statement, because counsel wants to raise the issue that there were some questions about where these complaints of the campaign were coming from. We acknowledge that. That's fine. But our factual statement need only provide this Court with enough facts to support the commission decision. That's not true. That's not what Supreme Court Rule 341 says. We present a complete picture, I believe. But that doesn't give us a statement of facts that contains the entire facts that we need to make a decision. And that means both sides of the story, without argument. That's correct. But that has to tie into what the standard of review is. And this is not a factual redetermination. It's an against the manifest way to the evidence. There's nothing wrong in your argument statement by saying, look, Blonsky said one thing, Medina said something else, the commission had a right to accept Medina and not Blonsky. But I think you have an obligation to tell us in your statement of facts what Blonsky said and what Blonsky, what his opinion was. You can make it in your argument that the commission could choose, but we have a right to know what it is. You can't just give us just those facts that are favorable to you and leave it to the other side to raise their facts. And that's fair. And I know that we do discuss Dr. Blonsky in our opening brief. I don't have the brief open in front of me. I don't recall to what extent. But we also attach in the appendix, you know, all of the documents necessary. So to the extent that there was a question as to whether or not we were being up front and complete with our recitation of what Dr. Blonsky's opinion was in the factual section, you know, we attach the arbitration decision, we attach the briefs on review, we attach the commission findings, which go through those in great detail. And beyond that, you know, counsel has submitted his own statement of facts, which is obviously, you know, quite lengthy and addresses everything. So it's our position that everything is before this court, that this court needs to consider to make a decision. Thank you, counsel. Thank you. Counsel. May it please the court, counsel. My name is Ian Kriska, and I'm representing Royal Continental Box, which is the appellee cross-appellant in this matter. I'm just going to go ahead, because I think my brief adequately sets out the arguments that I've presented here today. But I do want to respond to arguments that were raised by opposing counsel. Judges, the issue that Royal Continental Box has always stood on has been that this is not an issue of a contest of credibility between Dr. Blonsky and Dr. Medina or Dr. Blonsky and the petitioner, Mr. Charles, here. If Mr. Charles' pain complaints were 100 percent true, that doesn't indicate that they were causally connected to the original accident. So while I realize that Dr. Blonsky — Well, Medina opined that they were. Excuse me? Medina opined that they were. I understand that Dr. Medina opined that they were. But I think what we have to look at is what is the medical evidence that Dr. Medina cites to, or that Dr. Blonsky cites to, that actually connects those pain complaints, or any treater for that matter, that actually connects those pain complaints to the original accident? No pain is linked prior to the event, constant pain after the event, until arbitration. But let's look at the anatomical distribution of that pain. When we look at the occupational therapy records where the petitioner is complaining that he's got pain spreading from his foot to his calf, and you've got Dr. Blonsky saying, well, that doesn't make sense because pain wouldn't travel in that manner. Well, you've got Blonsky saying — I mean, you're not disputing — is anybody disputing he stepped into a bucket and had a chemical burn? No, absolutely not. That's obviously going to cause pain, right? I agree. So what do you mean there's no causal connection for the pain? The causal connection — I'm talking about the causal connection for his complaints at the time of trial. And so if you look — no one's disputing that if you step in a bucket full of chemicals, that it's possible that you can suffer a burn. It's clear that he suffered a 2-centimeter burn. It's clear that there was scarring on the dorsum of his foot. The question is, how does the pain emanate from that scarring? What's the extent of that pain that would debilitate him at the time of trial? Let me hit you with a very important question. You're right. I mean, the doctors, even Medina, don't seem to be able to trace the pain to a specific physical cause or source, okay? Let's assume that no doctor can do that. And you have the claimant testifying, and they find him to be believable and credible that he's experiencing every bit of pain he says he is. Where does that leave you? In the absence of — if you don't have evidence that explains that the distribution of the pain can't be supported. Yes. Be careful what you're going to opine here, because you've — Excuse me? Okay, go ahead. But our position is, if there's no medical evidence that says that the petitioner's pain complaints can't be supported because of how he's describing the emanation of that pain and how it's being distributed — The claimant must lose? No. What I'm saying is that I understand that in the case where there's no medical evidence, where there's a doctor saying — Well, I thought that's what we were saying. Dr. Blaski is saying, look, based on the complaints as they are being described, and based on the tests that I've seen, which are nerve blocks that should have eliminated this pain but did not, this pain can't be caused by the burn because of where the burn is located. The pain would have ceased using these nerve blocks, and the pain would not have traveled up Mr. Charles' leg, and he would not have been able to describe the complaints as he described them at the time of trial if the pain was really emanating from the area of the burn scar. If you don't have that kind of medical evidence, that kind of testimony from Dr. Blaski, if you don't have the FCEs and the evidence from the nerve blocks that show that the pain is still there, then perhaps the commission could draw the inference then that there is a causal connection. The problem is, is that you actually have objective medical evidence. You can forget about Dr. Blaski. You can look at the objective medical evidence, which is the functional capacity evaluation where the petitioner demonstrated self-limiting behavior, where he was working far better when he was distracted. The FCE was basically invalid because they weren't able to test the petitioner's maximum limits. All the FCE was able to tell you was what he could do at a minimum, not what he could do at a maximum. And the other issue, judges, is that the petitioner was weighed on side-by-side scales, and he actually put two-thirds of his weight on his injured side, on his left side, and that's significant. And what Dr. Blaski basically does in his deposition is he says, here, you know what? Okay, I've examined the petitioner one time, but I've actually looked at every single record in this case, and he reports on the results of those records, and then he explains how the sympathetic nervous system works and what the nerve blocks do. He does a good job of that, admittedly, but then doesn't Dr. Medina support the claimant's position? Only because Dr. Medina says, you know what? I don't really know what's causing this, but I believe that it's caused by the original injury. But to come up with an opinion to a reasonable degree of medical certainty, I think that you have to look at the actual evidence that's in the record, and that's what Dr. Blaski does. And I think in reporting on that evidence, I think that, you know, Dr. Blaski helped the respondent meet, you know, meet the requirements to show that the decision reached by the commission originally was against the manifest way to the evidence. You know, manifest way, in most cases, the case could have gone in either direction. You're citing all sorts of stuff that would have been great if the commission would have decided it your way, in which case your opponent would be out of luck trying to argue it's against the manifest way. We have valid evidence. But the fact of the matter is the commission knew all this stuff. They knew every bit of what you're telling us, and they still turned around and said, we're going along with Medina. And why are we going along with Medina? The guy has no pain. He steps in a bucket of chemicals. He gets burned, and he has constant pain from that day to the date of the hearing. And they turned around and said, you haven't given us any other explanation as to why he's got the pain. And his own treating physician said, I never even thought he was a malinger. And Blaski, who's, you know, a section 12 examiner, comes up with his opinions, and the commission says we reject them. So? Again, Judge, if this was just a matter of the petitioner testifying that he felt pain and doctors agreeing that he felt pain simply in that particular area of the foot, then fine. When the petitioner starts complaining about pain that just can't be verified by any medical test and pain that doesn't, it doesn't, it's not distributed in a way that it could be anatomically, that's an issue. Let me ask you some very pointed questions. It's not explainable by any objective medical determination. What if there were no doctors in this case? Take everybody out of it. He steps in a bucket. He testifies before the commission. He has all this pain. As a matter of law, can he be excluded from recovering if there's no doctors? Take the doctors out of it. Can you stand there and say he can't recover under the law? Not in every circumstance, no. Okay. In some circumstances he can. You're familiar with the chain of events line of recovery, right? Yes. Okay. What your basic argument is, is that, okay, Medina versus Blaski. Blaski is giving a scientific approach to this, that he's doing an elimination analysis, differential types of analysis. I mean, because pain is not objectively measurable anyway, is it? I don't believe it is. I believe you can. So he's saying he's done this and that. We know that the science, if I do a nerve block here, the nerve here should not produce reported pain. Right. If there's a connection. Right? I'd agree with that. So that basically the commission just erred in the arbitrator perhaps because just the quality of the evidence of yours is so superior. Right? Isn't that your argument? Well, I would say yes. But I also don't even want there to be, I'm not even trying to imply that there's a credibility issue that one doctor is necessarily better than another here. What I'm trying to say actually is that, and what we tried to do in the brief. Well, really, because you're saying that Blaski, what underlies his opinion is better diagnosis, better testing. If you look at the actual opinions, I would say that Dr. Blaski's opinion, yes, is a better opinion than Dr. Medina's. But if you look at what they're, if you look at what they're actually saying in their reports and in the depositions, what they're saying, the ultimate conclusion to what they're, their ultimate conclusions are different in terms of whether there was a causal connection, whether there wasn't. But what they're actually saying isn't necessarily contradictory because what all the doctors are saying is we don't know what's causing this pain. And Dr. Blaski is saying I don't know what's causing this either, but when I look at all of these tests, I just don't think that it could be caused by the original accident. We're not asking to say what it causes. What you're doing is an elimination of basic scientific research. You're eliminating. And Blaski eliminates. Right. And he does that using evidence. He does. You should agree with that suggestion. Excuse me? You should agree with that suggestion. I do agree. And the last point that I'd like to make, Judge, and this deals with, Judges, and this deals with the cross-appeal, is that the award of vocational rehabilitation, in my mind, really flows from a finding as to causal connection. So that if Judge Gardner reversed the commission's decision as to causal connection and found that there was a two-centimeter burn that had healed by the time of trial, that the petitioner's condition had stabilized as of spring or May of 2004 when now CTD has been cut off, and that the complaints at the time of trial are not supported by the medical evidence, and that goes back to the nerve blocks, Dr. Blaski's analysis, everything we just spoke about, then it would not make sense for the commission to have awarded vocational rehabilitation. And so the commission basically overstepped the bounds of the remand. You will concede that if we were to reverse Gardner's order, you would lose your cross-appeal, too? I would concede that. Okay. Thank you, Counsel. Thank you. Counsel, you may reply and respond. I think the response to the cross-appeal was adequately addressed by those comments in that the two were intertwined. So if the current order is reversed, then the cross-appeal falls away, too. I just want to address one thing that was brought up, a question when I was up here earlier about whether or not Dr. Blaski did, in fact, find anything in the records indicating that Mr. Charles was malingering. And I want to clarify where I was reading from when I said that there was no indication, and that is from the findings of fact of the arbitrator. And this is page A8 of our appendix. It says, On cross-examination, Dr. Blaski conceded that none of the various treating doctors with whom Petitioner treated had ever indicated that he was a malingerer. Dr. Blaski placed little weight upon the fact that the EMG showed some abnormality of the nerve in the foot. So again, I mean, and I think the questions that were raised when Counsel was standing up here before kind of reiterate what our argument is. There's a difference between there being no injury and there being no readily ascertainable direct organic link between the injury and the ongoing complaints of pain. It's clear throughout all these medical records and throughout the evidence that was presented to the commission that this gentleman continues to experience pain. And as the questions reflected, this is pain that there's no evidence existed before this injury. The commission did the right thing. Its opinion was supported by credible evidence, including but not limited to the opinion of Dr. Medina. And for that reason, we're asking that the arbitration award be restored. Thank you, Counsel. Thank you. A matter for taking under advisement. This position shall issue.